# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE THE APPLICATION OF:

███████████████████████

CASE NO. _____

REQUEST FOR DISCOVERY PURSUANT

TO 28 U.S.C. § 1782

**MEMORANDUM OF LAW IN SUPPORT OF**
████████████████████████ **_EX PARTE_ APPLICATION**
**FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

SEIDEN LAW LLP

Jake Nachmani
Dov B. Gold
Peter Grabowski
322 Eighth Avenue, Suite 1200
New York, NY 10001
(646) 766-1723

_Attorneys_ ████████████████

**TABLE OF CONTENTS**

THE DISCOVERY SOUGHT ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

    ███ and █████ ...................................................................................... 3

    ██████s Agreements With The Contractors For The  Project ............................... 4

    The Contractors' Default And ██████ Terminates The Project Agreements .......................... 5

    The Bond Issuers Improperly Refuse To Make Payments Under The Bonds ............................ 6

    The UK Action: ██████ Seeks Payment From The Bond Issuers .............................. 8

    The UK Action: ██████ Refuses To Produce Critical Discovery ......................... 9

    ██████ And ████████ Will Also Use the Evidence Sought In The Italian Actions..... 10

    ██████ Requests That The Court Expedite Its Review Of The Application ......................... 11

ARGUMENT ................................................................................................................. 11

  I.  THE APPLICATION SATISFIES ALL OF 28 U.S.C. § 1782's REQUIREMENTS .......... 12

    A.  ██████ Will Be Found In The District ................................................... 12

    B.  The Discovery Sought Is For Use In The Foreign Proceedings ................................... 13

    C.  ██████ Is An "Interested Person" In The Foreign Proceedings ................................... 16

  II.  THE COURT SHOULD ALSO GRANT THE APPLICATION UNDER *INTEL* ............... 17

    A.  ██████ Is Not A Participant In The Ongoing Proceedings ......................................... 18

    B.  UK And Italian Courts Are Receptive To § 1782 Relief................................................. 20

    C.  The Application Comports With Foreign Proof-Gathering Requirements .................... 21

    D.  The Application Is Not Unduly Intrusive Or Burdensome ............................................. 23

CONCLUSION ................................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*Aguila Energia e Participacoes Ltda. v. JPMorgan Chase & Co.*,
  2024 WL 3650347 (S.D.N.Y. Feb. 29, 2024) .................................................................. 14

*Application of Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992) .............................................................................................. 17

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ......................................................................................... 13, 18

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
  798 F.3d 113 (2d Cir. 2015) ............................................................................................ 14

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) ............................................................................................ 21

*In re Accent Delight International Ltd.*,
  791 F. App'x 247, 251 (2d Cir. 2019) ............................................................................. 22

*In re Accent Delight Int'l Ltd.*,
  869 F.3d 121 (2d Cir. 2017) ....................................................................................... 13, 15

*In re Application of Auto-Guadeloupe Investissement S.A.,
  for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*,
  2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ................................................................. 20

*In re Application of Cools and Steffens*,
  16-mc-0002, (S.D.N.Y. Jan. 15, 2016) ........................................................................... 20

*In re Application of Johannes Roessner to Take Discovery
  Pursuant to 28 U.S.C. 1782 in Aid of Foreign Litigants or Proc.*,
  2021 WL 5042861 (S.D.N.Y. Oct. 29, 2021) ................................................................. 19

*In re Application Pursuant to 28 U.S.C. Section 1782 for an Ord. Permitting
  Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries et al.*,
  249 F.R.D. 96 (S.D.N.Y. 2008) ...................................................................................... 18

*In re Batbold*,
  2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021) ................................................................... 21

*In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*,
  2024 WL 555780 (S.D.N.Y. Jan. 18, 2024) .................................................................... 21

*In re BonSens.org*,
  95 F.4th 75 (2d Cir. 2024) ............................................................................................... 13

*In re Bouka*,
    637 F. Supp. 3d 74 (S.D.N.Y. 2022) ...................................................................... 15

*In re Boustany*,
    23-mc-00027 (S.D.N.Y. Jan. 31, 2023) ................................................................ 12

*In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*,
    2014 WL 3404955 (S.D.N.Y. July 9, 2014) ......................................................... 17

*In re China Constr. Bank (Asia) Corp. Ltd.*,
    2023 WL 3791711 (S.D.N.Y. June 2, 2023) .................................................. 14, 21

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ................................................................................. 12

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002) ................................................................................. 12

*In re Eurasian Bank JSC*,
    2020 WL 85226 (S.D.N.Y. Jan. 2, 2020) ............................................................. 17

*In re Eurasian Nat'l Res. Corp.*,
    20-mc-00312 (S.D.N.Y. Sept. 9, 2020) ................................................................ 12

*In re Evenstar Master Fund SPC for & on behalf of*
*Evenstar Master Sub-Fund I Segregated Portfolio*,
    2021 WL 3829991 (S.D.N.Y. Aug. 27, 2021) ...................................................... 19

*In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782 Granting*
*Leave to Obtain Discovery for Use in Foreign Proc.*,
    2021 WL 1063390 (D. Del. Mar. 19, 2021) ................................................... 14, 21

*In re Ex Parte Application of Porsche Automobil Holding SE for an Ord.*
*Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*,
    2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ......................................................... 20

*In re FourWorld Event Opportunities Fund, L.P.*,
    2022 WL 17156111 (S.D.N.Y. Nov. 21, 2022) ............................................... 13, 19

*In re Furstenberg Fin. SAS*,
    2018 WL 3392882 (S.D.N.Y. July 12, 2018) ....................................................... 15

*In re Hansainvest Hanseatische Inv.-GmbH*,
    364 F. Supp. 3d 243 (S.D.N.Y. 2018) .................................................................. 22

*In re Kuwait Ports Auth.*,
    2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ....................................................... 16

*In re Laggner*,
    2025 WL 311198 (S.D.N.Y. Jan. 28, 2025) .......................................................................... 12

*In re Man Grp. Ltd.*,
    2025 WL 294277 (S.D.N.Y. Jan. 24, 2025) .......................................................................... 13

*In re Mutabagani*,
    2023 WL 2811621 (S.D.N.Y. Apr. 6, 2023) ......................................................................... 15

*In re Navios S. Am. Logistics Inc.*,
    2025 WL 887588 (S.D.N.Y. Mar. 21, 2025) ......................................................................... 14

*In re Orthogen Int'l GmbH*,
    2025 WL 662699 (S.D.N.Y. Feb. 28, 2025) ......................................................................... 16

*In re Oxus Gold PLC*,
    2007 WL 1037387 (D.N.J. Apr. 2, 2007) ............................................................................. 17

*In re Porsche Automobile Holding SE*,
    15-mc-00417 (S.D.N.Y. Dec. 29, 2015) ............................................................................... 12

*In re Refineria de Cartagena S.A.S.*,
    2024 WL 95056 (S.D.N.Y. Jan. 8, 2024) ............................................................................. 13

*In re SPS I Fundo de Investimento de Acoes-Investimento no Exterior*,
    2022 WL 17553067 (S.D.N.Y. Dec. 9, 2022) ....................................................................... 14

*In re Tel. Media Grp. Ltd.*,
    2023 WL 5770115 (S.D.N.Y. Sept. 6, 2023) ........................................................................ 21

*In re Tiberius Grp. AG*,
    2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020) ........................................................................ 22

*In re Top Matrix Holdings Ltd.*,
    2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) .................................................................... 15, 19

*In re Watkins*,
    2024 WL 4264900 (S.D.N.Y. July 26, 2024) ....................................................................... 21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ..................................................................................................... *passim*

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018) ................................................................................................ 11

*Mangouras v. Squire Patton Boggs*,
    980 F.3d 88 (2d Cir. 2020) ................................................................................................. 18

iv

*Matter of Ramos,*
  2025 WL 522535 (S.D.N.Y. Feb. 18, 2025) ............................................................... 13

*Mees v. Buiter,*
  793 F.3d 291 (2d Cir. 2015)................................................................................11, 13, 23

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.,*
  2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)........................................................ 18

*ZF Automotive U.S., Inc.,*
  596 U.S. 619 (2022) ......................................................................................... 13, 14

## Rules

28 U.S.C. § 1782....................................................................................... *passim*

Fed. R. Civ. P. Rule 26(b)(1)................................................................................ 23

## Other Authorities

S.Rep. No. 1580, reprinted in 1964 U.S.C.C.A.N. ...................................................... 16

Applicant ████████████████ ("████ or "Applicant"), by and through its

undersigned counsel, respectfully submits this memorandum of law for judicial assistance pursuant

to 28 U.S.C. § 1782 to conduct and obtain discovery for use in multiple foreign proceedings, the

first of which commenced trial in the UK on June 9, 2025 (the "Application").[1]

## THE DISCOVERY SOUGHT

████████ is a Russian corporation owned by ████████████ a Swiss corporation

and one of the largest fertilizer production and trading companies in the world. ████ was

formed to own and operate a fertilizer production plant in Russia budgeted at Euro 1.4 billion

(approximately $1.6 billion USD based on current exchange rates) ("Project"). ████ Decl.

¶4. The Project was abandoned by two turnkey contractors controlled by Respondent ████████

████ ("Respondent" or "████ forcing ████ to step in and complete construction while

incurring hundreds of millions of dollars in losses and extensive delays. *Id.* at ¶¶8, 9, 31-32. When

completed, the Project will make a significant contribution to global food security. *Id.* at ¶5.

████████ is the majority ultimate shareholder of ████ ████ ("████ an

Italian corporation, and its affiliate ████████ ("████ a Russian corporation

(together with ████ the "Contractors"), as well as being the Founder, Chairman, and

controlling shareholder of these entities' parent company, ████ ████ ████ ("████

████ Decl. ¶9. ████ and ████ were the turn-key contractors on the Project. *Id.*

The Contractors defaulted on their contractual obligations to ████ under the Project

Agreements (defined below), resulting in ████s demanding payment under the Bonds (defined

---

[1] References to "████ Decl.," "████ Decl.," "████ Decl.," and "Nachmani Decl."
are to paragraphs of the Declarations of ████████████████
and Jake Nachmani, respectively, all filed contemporaneously herewith. Capitalized terms not
otherwise defined have the same meaning ascribed to them in the ████ Declaration. All
emphasis is added; all internal quotations and citations are omitted.

below) relating thereto. *Id.* at ¶39. The Bond Issuers (defined below) refused to make payment

under the Bonds based on ▮▮▮▮▮▮ request. *Id.* at ¶¶16, 39.

By this Application, ▮▮▮▮ seeks to conduct discovery relating to Respondent's

involvement in the unlawful suspension and abandonment of the Project Agreements and the non-

payment of Bonds that followed. Such discovery is for use in the following three foreign

proceedings:

(i)  An action to be brought by ▮▮▮▮ against Respondent in the competent
     court of Italy that will be identified when such action is filed based on
     Respondent's place of residence at that time ("Italian Action").
     ▮▮▮▮ Decl. ¶5;

(ii) An ongoing court action in Italy pending before the Administrative
     Regional Tribunal of Lazio ("Tribunale Amministrativo Regionale del
     Lazio") in Italy against the Italian Ministry of Economy and Finance,
     Committee of Financial Security ("CFS"; and as to the action, the "Italian
     Sanctions Action") brought by ▮▮▮▮ ▮▮▮ ▮▮ the Italian
     subsidiary of ▮▮▮▮▮▮▮▮ to annul sanctions issued against
     ▮▮▮▮ ▮ by CFS on September 27, 2022. *Id.*; and

(iii) An ongoing legal proceeding in the UK before the High Court of Justice,
      Business and Property Courts of England and Wales, King's Bench
      Division Commercial Court in London in the matter ▮▮▮▮▮
      seeking payment on the Bonds which commenced trial ***on June 9, 2025***
      ("UK Action"; and together with the Italian Action and the Italian Sanctions
      Action, the "Foreign Proceedings"). ▮▮▮ Decl. ¶¶6, 40.[2]

Specifically, ▮▮▮▮ seeks discovery from Respondent in the form of his deposition

testimony and document production relating to whether he directed, instructed, caused, or assisted

in the following actions/failures to act:

(i)  The Contractors' unlawful suspension and abandonment of the Project
     Agreements in May 2022, which forced ▮▮▮▮ to terminate the Project
     Agreements on August 4, 2022;

---

[2] The underlying dispute concerning the Project's construction is the subject of an arbitration
before the International Chamber of Commerce ("Arbitration"); ▮▮▮▮ does not rely upon the
Arbitration as a basis for this Application.

(ii)   The Contractors' failure to obtain relevant permits, licenses, and/or approvals from the relevant Italian regulators (if and to the extent required) to mitigate and resolve issues arising under the Project Agreements, relating to any applicable sanctions and export control issues;

(iii)   Respondent's lobbying and communicating with the Italian sanctions authority to adopt the Italian Declaration (defined below) after ████ had terminated the Project Agreements and demanded payment on the Bonds, so as to buttress the Contractors' pretextual defenses for their violations of the Project Agreements and in an attempt to provide obstacles to payment under the Bonds; and

(iv)   Respondents' pressuring the Bond Issuers not to make payments under the Bonds based on false or misleading information and encouraging and lobbying the Bond Issuers to refuse paying under the Bonds.

████ sets forth the discovery it seeks in two contemporaneously-filed proposed subpoenas, a proposed subpoena for documents and a proposed deposition subpoena, submitted as Exhibits 1 and 2, respectively ("Proposed Subpoenas"), to the Declaration of Jake Nachmani. The scope of the discovery sought is narrow, focused, and would present no undue burden on Respondent, who, as the Contractors' controlling shareholder, stands to gain hundreds of millions of dollars should the Contractors' pretextual defenses be upheld.

## FACTUAL BACKGROUND

██ **and** ██████

Respondent is the majority ultimate shareholder of the Contractors engaged by ██████ to design and build the Project on a fixed-price, fixed-completion date basis. ██████ Decl. ¶¶9 21. The Contractors were previously the contractors on a similar, large fertilizer plant constructed on a site adjoining the Project. *Id.* at ¶8. The Contractors are within the same corporate group and share the same Italian parent corporation, ██ *Id.*

██ is a publicly-listed company traded on the Italian stock exchange and headquartered in Milan, Italy. *Id.* at ¶9. At all relevant times, Respondent has been the Chairman of the Board and a

majority shareholder of ███ *Id.* He is an Italian citizen and prominent businessman, often photographed in the company of Italy's President or other high-ranking Italian government officials. *Id.* at ¶10. According to members of █████ team, ██████ was actively involved in obtaining the Project Agreements for the Project (and its predecessor), for which he stressed his high-level connections with Italian government agencies, connections he claimed would assist ██████ with financing and other support for the Project. *Id.*

███████ **Agreements With The Contractors For The Project**

On June 1, 2020, ██████ and the Contractors entered into three contracts for the design, engineering, procurement, construction, commissioning, and testing of the Project. ██████ Decl. ¶11. Those contracts were: (1) the onshore engineering, local procurement, and construction contract between ██████ and ██████ ("Onshore EPC Contract"); (2) the offshore engineering and procurement contract entered into by ██████ with ██████ ("Offshore EPC Contract"); and (3) the coordination and interface agreement between ██████ and ██████ ("Coordination and Interface Agreement; and as to these agreements collectively, the "Project Agreements"). *Id.* ██ the Contractors' parent company, guaranteed and indemnified their obligations under the Project Agreements. *Id.* at ¶12.

Pursuant to the Project Agreements, the Contractors provided ██████ with on-demand payment bonds in the total amount of EUR 244,785,694 (on the date called by ██████ approximately $271.2 million at today's exchange rates; and as to the bonds, the "Bonds"). *Id.* at ¶13. The Bonds were issued to ██████ by the Contractors' issuing banks: Société Generale Paris, Societe Generale Milano Branch, ING Bank N.V. (Milan Branch; as and as to these banks collectively, the "Bond Issuers"), as well as Joint Stock Company Alfa-Bank. *Id.* ██████ counter-guaranteed all payments made by the Bond Issuers. *Id.* at ¶14.

**The Contractors' Default And ██████ Terminates The Project Agreements**

████████ was responsible for Project delays and mismanagement, causing ████████ to anticipate incurring large losses and liquidated damages of possibly hundreds of millions of dollars. ████████ Decl. ¶21; ████ Decl. ¶13. The Contractors sought substantial additional completion time and an additional payment of EUR 280,718,431 from ████ (approximately $306 million at current exchange rates), threatening to suspend work on the Project unless their demands were met. ████████ Decl. ¶22; ████ Decl. ¶13. After protracted negotiations and having already paid the Contractors more than EUR 575 million (approximately 40 percent of the total price), ████ rejected the Contractors' demands. ████████ Decl. ¶23; ████ Decl. ¶14.

On May 11, 2022, ████████ suspended performance under the Offshore EP Contract, falsely asserting that it was impossible to continue providing the offshore services due to export restrictions adopted by the EU in connection with the Russia-Ukraine conflict. ████████ Decl. ¶28. On May 24, 2022, ████████ suspended its performance under the Onshore EPC Contract, falsely alleging, *inter alia*, that: (i) the suspension of ████████ activities made it impossible to perform the Onshore EPC Contract; and (ii) the political situation interrupted delivery of certain materials and equipment, constituting force majeure under the EPC Contract. *Id.* at ¶29. However, most services were not prohibited by trade sanction regulations, and licenses or derogations could have been obtained for delivery of regulated materials. *Id.* at ¶30. Nevertheless, the Contractors abandoned the Project and refused to perform their Project Agreement obligations. *Id.*

Faced with the Contractors' unlawful suspension and abandonment of the Project, on August 4, 2022, ████████ terminated the Project Agreements and took over completion of the Project, spending significantly greater funds and time than would have been required if not for the Contractors' wrongful abandonment of the Project. *Id.* at ¶¶15, 31-32.

5

**The Bond Issuers Improperly Refuse To Make Payments Under The Bonds**

On August 4, 2022, and as a result of the Contractors' breaching their obligations under the Project Agreements, ▮▮▮▮ sent termination and demand notices to the Contractors, sending:

(i)     Termination notices to ▮▮▮▮ and ▮▮▮▮ under their respective contracts ("Termination Notices");

(ii)    Demands to the Bond Issuers for each of the Bonds; and

(iii)   A letter to the Contractors' parent company, ▮▮ informing it of the Termination Notices and ▮▮▮s intention to recover its losses from the Contractors and/or from ▮▮ under the guarantees that ▮▮ had provided. ▮▮▮▮ Decl. ¶15; ▮▮▮▮ Decl. ¶16.

The Bonds required the Bond Issuers to pay on demand the amount stated in the demands by August 10, 2022 – four business days after receipt of the demand. ▮▮▮ Decl. ¶17. Notwithstanding this requirement and ▮▮▮▮s demands, the Bond Issuers refused to pay ▮▮▮ the amounts due thereunder, giving rise to the UK Action. *Id.* at ¶18.

The Bond Issuers improperly refused to perform their obligations claiming that making payment would breach European and Italian law on sanctions. *Id.* at ¶19. In support of their position, the Bonds Issuers wrongly asserted that ▮▮▮▮ is owned or controlled by one or more sanctioned persons. It is not. *Id.* at ¶20.

Neither ▮▮▮ nor ▮▮▮▮ are sanctioned entities. ▮▮▮ Decl. ¶33; ▮▮ Decl. ¶21. They are not named on any sanctions list or owned or controlled by any sanctioned individual. ▮▮▮▮ Decl. ¶¶34-35; ▮▮▮ Decl. ¶29. It is indisputable that these entities are not sanctioned in the U.S. or the UK; both governments have determined that ▮▮▮▮ is not owned or controlled by any sanctioned party. ▮▮▮ Decl. ¶34; ▮▮ Decl. ¶29. ▮▮▮ ▮▮▮▮ a sanctioned individual who previously controlled ▮▮▮▮ resigned from all management and ownership roles before sanctions were

imposed in 2022. ████████ Decl. ¶34; ████ Decl. ¶29. Likewise, Switzerland, Germany, the Netherlands, France, Austria, Belgium, Ireland, and Poland have confirmed that member entities of ████████████ are not sanctioned. ████████ Decl. ¶35.

A significant outlier from the decisions of these numerous countries is Italy, which determined on September 27, 2022 – after ████████ had terminated the Project Agreements and demanded payment on the Bonds – that ████████ ████ ████ ████████ ████ the Italian subsidiary of ████████████ is subject to an asset freeze because it was allegedly "attributable to" ████████ ████████ a sanctioned individual ("Italian Declaration"). ████████ Decl. ¶¶36-38; ████ Decl. ¶30. However, this decision is manifestly wrong and highly suspicious. ████████ Decl. ¶38; ████ Decl. ¶31. It calls into question whether Respondent or persons under his direction or control lobbied the Italian authorities or provided the Italian authorities with misleading information to give ████████ a justification for suspending the loss-making Project Agreements and to protect it from paying millions of dollars on its counter-guarantees. ████████ Decl. ¶38; ████ Decl. ¶30.

If this did occur, as ████████ reasonably believes, Respondent could be liable for massive damages, which ████████ intends to pursue in the anticipated Italian Action. ████████ Decl. ¶7. Similarly, ████████ ████ prosecution of its annulment petition in the Italian Sanctions Action would be greatly strengthened if evidence demonstrated that the Italian Declaration was based on misleading information. *Id*. at ¶5. Such evidence would be relevant to the UK Action; it would affect the Bond Issuers' reliance on the Italian Declaration as a defense to not making payments on the Bonds. ████ Decl. ¶32.[3]

---

[3] The Bond Issuer Defendants are: Société Generale S.A., Société Generale Paris, Société Generale – Milano Branch (described as Société Generale Milano; collectively, "SocGen"), ING Bank N.V., and ING Bank N.V – Milan Branch (together, "ING"). ████ Decl. ¶23.

**The UK Action:** ▇▇▇▇▇▇ **Seeks Payment From The Bond Issuers**

▇▇▇▇▇▇ initiated the UK Action on August 19, 2022, when ▇▇▇▇▇ sued the Bond Issuers, seeking payment of the Bonds or alternatively damages (over EUR 212,5 million). ▇▇▇▇▇ Decl. ¶¶17-18; ▇▇▇▇ Decl. ¶¶22, 31. The proceeds of the Bonds have been assigned by ▇▇▇▇ to ▇▇▇▇▇▇▇▇ (▇▇▇▇▇s parent company), which joined the UK Action as an a claimant. ▇▇▇▇▇▇ Decl. ¶19; ▇▇▇▇ Decl. ¶27. ▇▇▇▇▇ was admitted as an interested third party. ▇▇▇▇▇ Decl. ¶20; ▇▇▇▇ Decl. ¶24. Respondent is not a defendant to the UK Action. ▇▇▇▇ Decl. ¶25.[4] The UK Action's trial commenced ***on June 9, 2025***. *Id.* at ¶42.

The Bond Issuers and ▇▇▇▇▇▇ focus their defense in the UK Action on the issue of sanctions. *Id.* at ¶32. Specifically, they assert that the Bonds could not be paid despite the Bonds' being "demand bonds," payable on demand without reference to the merits of the underlying dispute, because ▇▇▇▇ and ▇▇▇▇▇▇▇▇ were purportedly subject to sanctions in the EU, including by reference to the Italian Declaration. *Id.* This, the Bond Issuers allege, prevented the Bond Issuers from making payments to ▇▇▇ as doing so would purportedly violate applicable law in the Bond Issuers' home countries. *Id.* Those countries are France as to SocGen, and the Netherlands and Italy as to ING. *Id.*

▇▇▇▇ contends otherwise. ▇▇▇▇ asserts that the Bonds are governed by English law (undisputed), and that neither ▇▇▇▇ nor ▇▇▇▇▇▇▇ are subject to sanctions in the UK or in any relevant jurisdiction. *Id.* at ¶33. Sanctions are accordingly an important issue in the UK Action. Whether under UK law the Bond Issuers are prevented from making payment on the Bonds due to Italian sanctions regulations will be determined in the UK Action. *Id.*

---

[4] ▇▇▇▇▇ is also not a party to the Italian Sanctions Action. ▇▇▇▇▇▇ Decl. ¶39.

Disclosure is ongoing in the UK Action under operative disclosure rules. ███ Decl. ¶40. The discovery ███ seeks herein does not duplicate the discovery already produced in the UK Action. *Id.* Rather, ███ seeks evidence from ███ a non-party to the UK Action, relevant to ███ and ███ involvement in the unlawful suspension of the Project Agreements, issuance of the Italian Declaration, and the Bond Issuers' refusal to pay on the Bonds. *Id.* at ¶41.

**The UK Action: ███ Refuses To Produce Critical Discovery**

While ███ and the Bond Issuers rely on the Italian Declaration to support their assertion that payment on the Bonds would be illegal under Italian law, ███ has sought to avoid disclosing documents or providing evidence from ███ ███ Decl. ¶¶34-35. ███ General Counsel stated in a witness statement that "the only individuals who have communicated on behalf of ███ with sanctions authorities … of France, Italy and/or Cyprus … were myself and Mr. ███ ███ *Id.* at ¶34. Thus, ███ admits that it communicated with sanctions authorities but carefully drafted its witness statement to limit it to exclude any communications by ███ or ███ while simultaneously not providing an explanation for such communications. *Id.*

███ sought to add ███ as a disclosure custodian, but the UK court declined to do so under UK proceedings' limited disclosure and in reliance on ███ General Counsel's above statement. *Id.* at ¶36. ███ has vigorously opposed discovery. *Id.* at ¶35. With the UK Action's trial being ongoing and the time for any potential remaining disclosure nearing an end, ███ has produced only 9 documents – and none from ███ *Id.* ███ and ███ have produced thousands of documents. *Id.*

Establishing the baseless rationale on which the Italian authorities incorrectly determined that ███ was owned or controlled by a sanctioned person is highly relevant in the UK Action, as it would significantly weaken the Contractors' and Bond Issuers' position that sanctions

apply, including the applicability of the Italian Declaration. ███ Decl. ¶37; ███ Decl. ¶8.

**███    And ███    ███    Will Also Use the Evidence Sought In The Italian Actions**

███ and ███ will also use the discovery it seeks by this Application in the current Italian Sanctions Action and in ███s anticipated Italian Action. ███ Decl. ¶5. As to the Italian Sanctions Action, ███ seeks to annul the Italian Declaration on the basis that the Italian Declaration was issued on incorrect information concerning the ownership or control of ███ ███ parent company, ███ *Id.* at ¶¶5, 8. As to the Italian Action, ███ anticipates that within the next several months it will commence that matter against ███ arising out his alleged misconduct involving the Italian sanctions authorities, the Italian Declaration, and how his misconduct damaged ███ in connection with the Project Agreements. *Id.* at ¶¶5, 12.

Italian counsel ███ has been retained and is advising ███ on bringing this action. ███ Decl. ¶40; ███ Decl. ¶¶12-13. He advises that suit against Respondent will be based on Section 2395 of the Italian Civil Code, which provides a party with the right to claim damages from the director of a company, if such damages have been directly caused to third parties that have been directly damaged by any willful misconduct (in Italian "*dolo*") or negligence ("*colpa*") of the director. *Id*. at ¶12. The liability of directors pursuant to Section 2395 is a type of tortious liability that applies where willful misconduct or negligence is made in the course of or as consequence of acts made in the interest of the company (including if the directors acted when carrying out their duties in execution of a resolution of the board of directors, in which case liability extends to all the members who concurred). *Id.* The requisites for the claim are: (i) any willful or negligent act/omission of directors, in breach of their legal and statutory duties; (ii) damage incurred by a claimant; (iii) a causal relationship ("*nesso causale*")

between these factors. *Id.*

Italian counsel has advised ███████ that, if the foregoing requirements are substantiated, ███████ as a director of ██ at all relevant times, would be liable to ███████ under Section 2395. *Id.* Likewise, Italian counsel has advised ███████ that such a claim is timely, as it is within the applicable five-year statute of limitations. *Id.* Evidence obtained pursuant to the Application could be submitted to and would be considered by the Italian court. *Id.*

### ███████ **Requests That The Court Expedite Its Review Of The Application**

In light of the ongoing trial in the UK Action, ███████ submits the Application for the Court's expedited review. With such expedited review, ███████ will be able to obtain, review, and use the discovery it receives from Respondent in time for use in the UK Action.

## ARGUMENT

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order [the person] to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." *Id*. As a threshold matter, a court must determine whether it "possesses jurisdiction to grant a § 1782 [application]" based on § 1782's statutory requirements. *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018). If these "requirements are met, a district court may grant discovery under § 1782 in its discretion," as guided by the factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("*Intel*"). *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015).

Here, ███████ Application should be granted because, as set forth below, the Application meets each of § 1782's statutory elements. *See* Section I *infra*. Likewise, each *Intel* factor weighs in favor of granting discovery. *See* Section II *infra*. Because of the urgent need for discovery arising out of the UK Action's June trial date and ongoing trial (███ Decl. ¶42), ███████ respectfully

requests that this Court expedite its consideration of this Application, consistent with this District's treatment of time-sensitive § 1782 applications. *See, e.g.*, *In re Boustany*, 23-mc-00027, ECF 7 (S.D.N.Y. Jan. 31, 2023) (granting § 1782 application within one day of its filing); *In re Eurasian Nat'l Res. Corp.*, 20-mc-00312, ECF 11 (S.D.N.Y. Sept. 9, 2020) (same within seven days; *In re Porsche Automobile Holding SE*, 15-mc-00417, ECF 4 (S.D.N.Y. Dec. 29, 2015) (same within six days; ordering a response to subpoena within two weeks of service).

## I.    THE APPLICATION SATISFIES ALL OF 28 U.S.C. § 1782's REQUIREMENTS

A court will have jurisdiction and can order discovery pursuant § 1782 where three statutory requirements are met: (1) that the person from whom discovery is sought either resides or can "be found" in the district; (2) that the discovery is "for use" in a proceeding before a foreign tribunal; and (3) that the application is made by a foreign or international tribunal or "any interested person." *In re Edelman*, 295 F.3d 171, 175-76 (2d Cir. 2002).  As set forth below, this Application satisfies all of § 1782's statutory requirements.

### A.    ▮▮▮▮▮▮    Will Be Found In The District

The Second Circuit has held that "[Section] 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). For that reason, "if a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district." *In re Edelman*, 295 F.3d 171 at 180; *In re del Valle Ruiz*, 939 F.3d 520 at 527 (tag jurisdiction is "sufficient to satisfy § 1782's 'found' requirement."); *In re Laggner*, 2025 WL 311198, at *3 (S.D.N.Y. Jan. 28, 2025) (noting that an individual is subject to "tag jurisdiction when served with process while within the district.").

Here, ▮▮▮▮▮ will be found in this District and served, as ▮▮▮▮▮ intends to serve ▮

████ when he enters the District. ████ anticipates ████ arrival in New York; ████ will serve ████ with this Applications' papers when he arrives. Nachmani Decl. ¶4; *see In re FourWorld Event Opportunities Fund, L.P.*, 2022 WL 17156111, at *3 (S.D.N.Y. Nov. 21, 2022) (respondent would be "found" in the district upon respondent's being served in the district, notwithstanding that respondent was not in the district at the time of the application's filing).

**B.  The Discovery Sought Is For Use In The Foreign Proceedings**

The statutory requirement that the discovery sought is "for use" in a foreign proceeding is satisfied where an applicant establishes that the discovery sought "will be employed with some advantage or serve some use in the proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). A district court "should not consider the discoverability of the evidence in the foreign proceeding[.]" *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). Likewise, as to "the admissibility of evidence in the foreign proceeding [.]" *Id.* Rather, the element is established based on a showing that "the evidence is minimally relevant to the foreign proceeding." *In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024). Accordingly, the "burden imposed on the applicant in this regard is *de minimis.*" *In re Refineria de Cartagena S.A.S.*, 2024 WL 95056, at *7 (S.D.N.Y. Jan. 8, 2024); *see also Matter of Ramos*, 2025 WL 522535, at *4 (S.D.N.Y. Feb. 18, 2025) (the required showing is a "low threshold"). The Second Circuit has warned against "speculative forays into legal territories unfamiliar to federal judges because such a costly, time-consuming, and inherently unreliable method of deciding § 1782 requests" would undermine the statute's aims. *Mees*, 793 F.3d at 298-99. A "foreign proceeding" refers to "governmental or intergovernmental" tribunals. *See ZF Automotive U.S., Inc.*, 596 U.S. 619, 627 (2022).

Here, the UK Action is "indisputably" a "foreign proceeding before a foreign court." *In re Man Grp. Ltd.*, 2025 WL 294277, at *3 (S.D.N.Y. Jan. 24, 2025); *see In re Refineria de Cartagena*

*S.A.S.*, 2024 WL 95056, at *7 (litigation before the High Court of Justice of England and Wales was a "foreign proceeding"). This is also true as to the Italian Sanctions Action. *In re China Constr. Bank (Asia) Corp. Ltd.*, 2023 WL 3791711, at *1 (S.D.N.Y. June 2, 2023) (civil litigation in Italy was a "foreign proceeding"); *In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021) (civil and criminal proceedings in Italy were "foreign proceedings").

Likewise, the Italian Action is a contemplated foreign proceeding before a foreign tribunal (the Italian court) sufficient to support this Application. The Supreme Court has recently reconfirmed that § 1782 discovery is available for use in proceedings "within reasonable contemplation." *ZF Auto. US, Inc.*, 596 U.S. at 632 (citing *Intel*). An anticipated action is within reasonable contemplation where an applicant provides "some objective indicium that the action is being contemplated." *In re Navios S. Am. Logistics Inc.*, 2025 WL 887588, at *2 (S.D.N.Y. Mar. 21, 2025). One such indicator is whether the "proceedings will be instituted within a reasonable time." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015).

Here, ▮▮▮▮ has established objective indicium that the Italian Action is being contemplated, including that it will be instituted within a reasonable time. ▮▮▮▮ has retained Italian counsel who has advised it on the feasibility of the contemplated proceeding and has set forth the Action's factual and legal basis. ▮▮▮▮ Decl. ¶40; ▮▮▮▮ Decl. ¶12. ▮▮▮▮ has identified the likely party to the Italian Action and the likely timeframe within which it will be brought. *Id.* This is more than sufficient to serve as the basis for a § 1782 application. *See Aguila Energia e Participacoes Ltda. v. JPMorgan Chase & Co.*, 2024 WL 3650347, at *6 (S.D.N.Y. Feb. 29, 2024) (identification of legal basis, how discovery would be used, and identification of parties was sufficient); *In re SPS I Fundo de Investimento de Acoes-Investimento no Exterior*, 2022 WL

17553067, at *4 (S.D.N.Y. Dec. 9, 2022) (contemplated proceeding was sufficiently set forth where applicant "provided a sworn statement from its [foreign] lawyer attesting to [the applicant's] intent to initiate the contemplated proceeding and outlining its legal theories therein"); *In re Bouka*, 637 F. Supp. 3d 74, 87 (S.D.N.Y. 2022) ("[b]ecause [the applicant] had retained local counsel, laid out a basis for liability, and identified the factual basis of his claims, we find that the [contemplated] [p]roceedings are 'reasonably contemplated,' and thus the requested discovery would be 'for use' in a foreign proceeding"); *In re Furstenberg Fin. SAS*, 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (proceeding was reasonably contemplated where "petitioners have sworn th[ey] intend to file a criminal complaint in ... Luxembourg ... and have articulated a specific legal theory on which they intend to rely"); *see also In re Mutabagani*, 2023 WL 2811621, at *3 (S.D.N.Y. Apr. 6, 2023) (sworn statements attesting to contemplated litigation were sufficient to satisfy for-use requirement); *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) ("This Circuit has found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement."); *In re Accent Delight Int'l Ltd.*, 869 F.3d at 135 (noting that a § 1782 applicant may use "the discovery elsewhere unless the district court orders otherwise.").

The discovery ███████ seeks is significantly relevant to ███████ claims. As to the UK Action, the gravamen of ███████ claims is that the Bond Issuers must pay ██████ the money demanded by ██████ while the Bond Issuers' defense is based in large part on the Italian Declaration. ████ Decl. ¶¶22, 32. The discovery is relevant to the claims in the Italian Sanctions Action, as the core issue there is whether it is based on incorrect information regarding ███████ ███████ purported ownership and control by a sanctioned person. ██████ Decl. ¶8. Such evidence is also central to ██████ claims in the anticipated Italian Action – that Respondent

15

directed, knew of, or participated in the Contractors' improper suspension and abandonment of the Project Agreements on a pretextual basis and failed to obtain the relevant permits (if and when required) and is thus liable for ███████ damages. *Id.* at ¶12.

**C.    ███████ Is An Interested Person In The Foreign Proceedings**

The term "interested person" includes someone with "participation" or procedural rights and who "possess[es] a reasonable interest in obtaining [judicial] assistance." *Intel*, 542 U.S. at 256-57. The legislative history of § 1782 also makes plain that "interested person" includes "a party to the foreign . . . litigation." S.Rep. No. 1580, reprinted in 1964 U.S.C.C.A.N. at 3789; *Intel*, 542 U.S. at 256 (noting that litigants in the foreign proceeding are "no doubt" the most common example of interested persons). Indeed, "litigants are included among, and may be the most common example of, the interested person[s] who may invoke § 1782." *Intel*, 542 U.S. at 256.

Here, there is "no doubt" that ███████ is an interested person in the UK Action and the anticipated Italian Action, as ███████ is a claimant in the UK Action and will be the claimant in the Italian Action. ███████ Decl. ¶6; ███████ Decl. ¶¶5, 12; *Intel*, 542 U.S. at 256; *see also In re Orthogen Int'l GmbH*, 2025 WL 662699, at *3 (S.D.N.Y. Feb. 28, 2025) (applicant was interested person because it would be a plaintiff in a contemplated foreign litigation); *In re Kuwait Ports Auth.*, 2021 WL 5909999, at *9 (S.D.N.Y. Dec. 13, 2021) (applicant would "be a party in the anticipated winding up proceedings" made party an "interested person").

███████ is also an interested person in the Italian Sanctions Action, as the Supreme Court, recognizing that an interested person is anyone who "possesses a reasonable interest in obtaining judicial assistance," construes the term broadly so as to apply not just to parties to foreign proceedings but to applicants affected by foreign proceedings. *Intel*, 542 U.S. at 256-57 ("The text of § 1782(a) … plainly reaches beyond the universe of persons designated 'litigant' and includes

a complainant who triggers a [foreign proceeding and] has a significant role in the process."). *See also Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992) (interpreting "interested person" broadly and noting the legislative intent to "liberalize the assistance provided by American courts to foreign and international tribunals"). An applicant that is a non-party to a foreign proceeding but that has a "close connection" to a party and the foreign proceeding is an interested person under § 1782. *In re Oxus Gold PLC*, 2007 WL 1037387, at *7 (D.N.J. Apr. 2, 2007). Likewise, where a non-party is an "injured party," that non-party is an "interested person" under § 1782. *In re Eurasian Bank JSC*, 2020 WL 85226, at *1 (S.D.N.Y. Jan. 2, 2020)

Here, ███████ is closely related to ███████ ████ and is intimately involved in the issues in the Italian Sanctions Action. ███████ Decl. ¶9. Moreover, ███████ suffered substantial injury as a result of the Italian Declaration, as demonstrated by the fact that the Italian Declaration constitutes a major defense upon which ███████ and the Bond Issuers rely. ███████ Decl. ¶32. An outcome in the Italian Sanctions Action, the annulment of the Italian Declaration, will have a substantial impact on ███████ ███████ Decl. ¶9. As such, ███████ is an interested person in the Italian Sanctions Action. *See In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *8 (S.D.N.Y. July 9, 2014) (recognizing that corporate relationship such as parent-subsidiary could render non-party an interested person).

## II.    THE COURT SHOULD ALSO GRANT THE APPLICATION UNDER *INTEL*

Under *Intel*, once the § 1782 statutory standards have been met, the district court should consider four factors when deciding whether to exercise its discretion to grant § 1782 discovery: (1) whether the target of discovery is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the proceedings' character, and the tribunal's receptiveness to U.S. federal court

assistance; (3) whether the application attempts to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65.

As the Second Circuit has advised, a district court should exercise its discretion in granting a § 1782 application "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020). The "pursuit of these twin goals" typically requires "increasingly broad applicability." *Brandi-Dohrn*, 673 F.3d at 80. To that effect, "[t]he Second Circuit "has consistently ruled that it is far better to provide federal court assistance than none at all." *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *4 (N.D.N.Y. Aug. 18, 2008) (granting the § 1782 application). Here, the Court should permit ████ to issue the Proposed Subpoenas because the *Intel* factor weighs strongly in favor of granting the Application.

### A.    ████ Is Not A Participant In The Ongoing Proceedings

Under the first *Intel* factor, that a respondent is not a participant in the foreign proceeding favors granting the § 1782 application. *See Intel*, 542 U.S. at 264. This is because if the non-participant is "outside the foreign tribunal's jurisdictional reach," a party seeking documents from the non-participant may not be able to rely on the foreign tribunal to obtain these documents. *Id.* Where a respondent to a § 1782 application is not a participant in the foreign proceeding, the need for a § 1782 discovery is significant because the respondent "would not be subject to the jurisdiction" of the foreign court. *In re Application Pursuant to 28 U.S.C. Section 1782 for an Ord. Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries et al.*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008).

Here, ███ is not a participant in the ongoing UK Action or the Italian Sanctions Action. ███ Decl. ¶25; ███ Decl. ¶8. While ███ an entity to which ███ has an interest, is a third party in the UK Action, ███ should be considered a separate legal entity as to § 1782, such that ███ should be permitted to take discovery from ███ ███ Decl. ¶¶9, 20; ███ Decl. ¶26; *see also In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *5 (corporate entity and entity's CEO were separate legal entities; permitting § 1782 discovery on CEO while parent company was participant in foreign proceeding); *see also In re FourWorld Event Opportunities Fund, L.P.*, 2022 WL 17156111, at *4 (S.D.N.Y. Nov. 21, 2022) (director of entity was not a participant in foreign proceeding even though entity for which he was on the board was a participant); *In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Portfolio*, 2021 WL 3829991, at *11 (S.D.N.Y. Aug. 27, 2021) (same as to president/director); *In re Application of Johannes Roessner to Take Discovery Pursuant to 28 U.S.C. 1782 in Aid of Foreign Litigants or Proc.*, 2021 WL 5042861, at *2 (S.D.N.Y. Oct. 29, 2021) (respondent-subsidiary not participant even though its parent company was participant).

While Respondent will be a party to the anticipated Italian Action, this does not militate against granting discovery because Italian civil law does not provide for disclosure by parties. ███ Decl. ¶14. In contrast to common law jurisdictions, in Italy, mandatory disclosure of documents by parties is considered to be an exceptional measure; Italian law does not require parties to proactively disclosure relevant documents to the opposing parties. *Id.* This leaves each party responsible for providing evidence without court assistance except in rare cases where the requesting party can clearly demonstrate that the opposing party has essential evidence that cannot be obtained in any other manner. *Id.* Thus, the fact that Respondent will be a party to the Italian Action does not trigger the *Intel* presumption that the evidence sought here could be obtained in

19

the Italian Action. *See In re Ex Parte Application of Porsche Automobil Holding SE for an Ord. Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016) (that a party from whom discovery was sought was a party to a foreign proceeding governed by civil law did not weigh against granting § 1782 application because the disclosure rules applicable in civil law proceedings do not provide for mandatory disclosure from adverse parties; "that the relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application — is supported by the weight of authority in this district."; citing authorities); *In re Application of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*, 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012) ("this Court is not persuaded that *Intel* precludes § 1782 discovery of parties participating in the underlying international proceeding."; noting that the first *Intel* factor weighed in favor of granting § 1782 discovery because "it [wa]s not clear the [foreign court] could order [respondent] to produce the documents that [applicant] is seeking"); *see also In re Application of Cools and Steffens*, 16-mc-0002, Tr. at 47:8-16 (ECF 29) (S.D.N.Y. Jan. 15, 2016) ("the technical status of an individual from whom 1782 evidence is sought … vis-a-vis status as a participant, whatever precisely that means, does not turn so much on the technical classification. It turns, rather, on whether the discovery sought in a 1782 proceeding is available in the foreign jurisdiction, and that … is simply not the case with respect to [respondent].").

### B.  UK And Italian Courts Are Receptive To § 1782 Relief

The second *Intel* factor requires the Court to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. In

assessing this factor, a court should "consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782" brought by the § 1782 respondent. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). Such proof is "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures[.]" *Id*. "Absent this type of clear directive," a court should grant a § 1782 application. *Id.*; *see also In re Watkins*, 2024 WL 4264900, at *9 (S.D.N.Y. July 26, 2024) (second *Intel* factor weighed in favor of applicant because respondents proffered "no authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782.").

Here, this factor weighs heavily in favor of granting the Application. ████████ UK and Italian counsel have stated that the respective UK and Italian courts are amenable to accepting evidence obtained hereunder. ██████ Decl. ¶43; ███████ Decl. ¶¶11, 13. And "there is ample evidence that courts in the United Kingdom ... are [ ] receptive to Section 1782 discovery." *In re Tel. Media Grp. Ltd.*, 2023 WL 5770115, at *8 (S.D.N.Y. Sept. 6, 2023). The SDNY "routinely find that courts in the United Kingdom" accept § 1782 discovery. *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, 2024 WL 555780, at *11 (S.D.N.Y. Jan. 18, 2024) (discovery for use before the UK High Court); *In re Batbold*, 2021 WL 4596536, at *1 (S.D.N.Y. Oct. 6, 2021) (same). The same applies to Italian courts. *See In re China Constr. Bank (Asia) Corp. Ltd.*, 2023 WL 3791711, at *1 (S.D.N.Y. June 2, 2023); *In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782.*, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021).

### C. The Application Comports With Foreign Proof-Gathering Requirements

The third *Intel* factor is whether the § 1782 application seeks to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. The Second Circuit has instructed that "there is a difference between a § 1782(a) request

that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a *mechanism* for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction *prohibits* the discovery of those documents." *In re Accent Delight International Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) (emphasis in original). In the former case, the § 1782 discovery should be allowed; just because a country does not have broad discovery "does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means." *Id*. In the latter case, discovery should be denied since the § 1782 petitioner would be "attempt[ing] to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Intel*, 542 U.S. at 265. To that effect, courts in the Second Circuit "routinely grant § 1782 applications where the discovery sought might not be available in the foreign legal system, but is not explicitly prohibited from being acquired by way of a § 1782 application." *In re Tiberius Grp. AG*, 2020 WL 1140784, at *5 (S.D.N.Y. Mar. 6, 2020). To demonstrate impermissible circumvention under *Intel*, a respondent "must illustrate not merely that the requested [discovery is] not obtainable" through the foreign tribunal's procedures, but that applicant is "engaged in a bad faith endeavor to misuse Section 1782." *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018).

Here, this factor weighs heavily in favor of granting the Application, as the UK Court has no "proof-gathering restrictions" against the discovery ███ seeks to obtain from ███ ███ Decl. ¶43. While the UK court declined to extend disclosure to additional persons, such as Respondent, under the limited disclosure rules applicable in the UK, the UK court did not limit the use of evidence obtained from Respondent through other evidence gathering mechanisms such as this Application. *Id*. Thus, Respondent can show no bad faith on ███ part. The same applies to the Italian Action. ███ Decl. ¶14.

### D.  The Application Is Not Unduly Intrusive Or Burdensome

The final *Intel* factor is satisfied where the discovery sought is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. A court evaluating a § 1782 discovery request "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 298. Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. Rule 26(b)(1). To that effect, it is "far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302.

Here, the discovery ███ seeks is relevant to ███ claims and defenses in the three Foreign Proceedings thereby comporting with Rule 26's guidelines. ███ Decl. ¶41; ███ Decl. ¶5; *see* Section I.B *supra*. There is nothing overbroad, disproportionate, or oppressive about the Proposed Subpoenas; this discovery should be readily available to ███ and is likewise based on his personal knowledge and experience, as corroborated by discovery already produced in the UK Action establishing ███ and ███ involvement in Italy's sanctioning ███ and the Bond Issuers' refusing to pay ███ in connection with the Bonds. Nachmani Decl. ¶¶5-6; Nachmani Exs. 1-2.

### <u>CONCLUSION</u>

For all the reasons set forth herein, ███ Application should be granted.


Dated: June 25, 2025
New York, New York

_/s/ Jake Nachmani_

**SEIDEN LAW LLP**
Jake Nachmani
Dov B. Gold
Peter Grabowski
322 Eighth Avenue, Suite 1200
New York, NY 10001
jnachmani@seidenlaw.com
dgold@seidenlaw.com
pgrabowski@seidenlaw.com
(646) 766-1723

_Attorneys for_ ███████████

24